[Cite as *State v. Banks*, 2023-Ohio-292.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 : CASE NO. 22CA3980 &
                                  CASE NO. 22CA3981
    v.                                  :

KACEY D. BANKS,                         :
and Allegheny Casualty Company
and Lee Bail Bonds, LLC,                : DECISION AND JUDGMENT ENTRY

    Defendants-Appellants.              :

_____

APPEARANCES:

George L. Davis, IV, Portsmouth, Ohio, for appellants.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:1-26-23
ABELE, J.

{¶1} This is an appeal from Scioto County Common Pleas Court judgments that found Lee Bail Bonds, LLC and Allegheny Casualty Company, appellants herein, did not show cause why judgment should not be ordered in bond forfeiture proceedings.

{¶2} Kacey D. Banks, defendant below, was convicted of various drug-related offenses in two cases. After Banks failed to appear at sentencing, the trial court ordered his bond forfeited and,

after a show-cause hearing, entered a judgment against appellants in each case.

{¶3} Appellants assign one error for review:

"THE TRIAL COURT PREJUDICIALLY ERRED BY ENTERING JUDGMENT AGAINST THE SURETIES."

{¶4} In May 2020, a Scioto County Grand Jury returned an indictment that charged Banks with multiple drug-related offenses (Trial Court Case No. 20CR109A (Appellate Case No. 22CA3981)). In August 2020, a Scioto County Grand Jury returned an indictment that charged Banks with multiple drug-related offenses (Trial Court Case No. 20CR470A (Appellate Case No. 22CA3980)).

{¶5} In Case No. 20CR109A, the trial court released Banks on a $50,000 surety bond posted by Smith Bonds and Surety. After the indictment in Case No. 20CA470A, the court granted the state's motion to revoke the bond and released Smith Bonds and Surety. On July 22, 2020, the trial court decided to order a $250,000 cash or surety bond and, on September 28, 2020, Lee Bail Bonds and Allegheny Company, appellants herein, posted the $250,000 surety bond in both Case No. 20CR109A and Case No. 20CR470A.

{¶6} On June 28, 2021, Banks entered a no contest plea to trafficking in a Fentanyl-related compound with a major drug offender specification, a first-degree felony. The trial court

scheduled sentencing for July 30, 2021.  When Banks failed to appear for sentencing, the court, pursuant to R.C. 2937.35, ordered forfeiture of bail in both cases, issued a bench warrant for Banks' arrest, notified appellants, and ordered appellants to show cause why judgment should not be entered for the bond amount set forth in each case.

{¶7}  On January 27, 2022, the trial court held a show cause hearing.  Andrew Callif testified that Lee Bail Bonds acted as his sub-agent and acknowledged they had not yet apprehended Banks.

> We * * * had his family sign the bond.  We had him on ankle monitor.  He would call us every week, which he would do. We * * * follow the monitor, as the company could too.  He would always check in with us.  He would * * * come in after his court date * * * to let us know what's going on. And like he made every single court date, and * * * I guess he made a * * * plea deal * * * and he had a Codefendant, Promise Hollings.
>
> * * *
>
> And when they were driving down here to * * * come to the sentencing, she came down * * * and he ripped off his angle monitor on I-75.  I think it was near Detroit.  And put it in a nice bag, and we located it.  But we got him to every single court date * * * just after he pled guilty to it, you know, his lawyer * * * [t]old me he was going to do decades in prison.  And you know * * * I'm guessing he wasn't willing to do decades in prison.

The trial court asked Callif if they had tracked Banks after he failed to appear and Callif stated that they spotted Banks once in Detroit, but did not have sufficient staff to apprehend him.

SCIOTO, 22CA3980 & 22CA3981

Callif explained:

> [W]e've had a sighting. I have people in Detroit working on it. * * * [W]e've been to Detroit. We've been to Chicago. You know, we've probable [sic.] put in about $10,000.00 so far to locating him. We're * * * doing everything we can possibly do * * * I've been in business for 20 years, my dad's been in it for 50 years, and you know * * * obviously we're doing everything we can possibly do * * *. [Y]ou know he pled guilty so he knows that when he gets caught, you know, he's going to be doing some major time, so it makes it, you know, harder, I guess.

{¶8} Callif proposed payment to the trial court of a non-refundable $10,000 monthly payment until they apprehended Banks, but the court declined and entered judgment in 20CR109A and 20CR470A against Lee Bail Bonds, Phillip Lee, and Allegheny Casualty Company for $250,000 per case, for a total of $500,000. The court's judgment states that "the Surety failed to produce the defendant or show cause why judgment should not be ordered herein." This appeal followed[1].

I.

{¶9} In their sole assignment of error, appellants assert that the trial court erred by entering judgment against the sureties. In particular, appellants argue that the sureties showed good cause why judgment should not have been entered against them.

---

[1] On July 14, 2022, this Court consolidated Case No. 22CA3981 and 22CA3980.

{¶10} "A trial court's bond-forfeiture decision is reviewed using an abuse of discretion standard." *State v. Slider*, 184 Ohio App.3d 68, 2009-Ohio-4179, 919 N.E.2d 775, ¶ 10 (4th Dist.), citing *State v. Green*, 9th Dist. Wayne No. 02CA0014/02CA0019, 2002-Ohio-5769, ¶ 11. "'[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a ' "sound reasoning process." ' " *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The abuse of discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Darmond* at ¶ 34.

{¶11} "Bail is security for the appearance of an accused to appear and answer to a specific criminal * * * charge in any court or before any magistrate at a specific time." *State v. McKinney*,

2021-Ohio-3108, 177 N.E.3d 1022, ¶ 10 (4th Dist.), citing R.C. 2937.22(A).  Bail can be "cash or a bond."  *State v. Dye,* 2018-Ohio-4551, 122 N.E.3d 678, ¶ 24 (5th Dist.), citing Black's Law Dictionary 7th Ed.  Further, "[a] surety's recognizance bond is a contract between the surety and the state whereby the state agrees to release the defendant into the surety's custody and the surety agrees to ensure the defendant is present in court on the appearance date."  *City of Youngstown v. Edmonds,* 2018-Ohio-3976, 119 N.E.3d 946, ¶ 12 (7th Dist.), citing *State v. Lott*, 2014-Ohio-3404, 17 N.E.3d 1167, ¶ 8 (1st Dist.); *State v. Sherer*, 108 Ohio App.3d 586, 591, 671 N.E.2d 545 (2d Dist.1995); *McKinney* at ¶ 10.

**{¶12}** R.C. 2937.36(C) sets forth bond forfeiture proceedings. The court notifies the accused and each surety and requires each of them to

> show cause * * * why judgment should not be entered against each of them for the penalty stated in the recognizance. If good cause by production of the body of the accused or otherwise is not shown, the court * * * *shall* thereupon enter judgment against the sureties or either of them, so notified, in such amount, not exceeding the penalty of the bond * * *.  (Emphasis added.)

R.C. 2937.36(C).

**{¶13}** Recently, this court examined the forfeiture statute in *McKinney*, *supra.*  We noted that, in certain circumstances, "a promisor may be excused from an obligation to the promisee when the

performance promised is rendered impossible by operation of law, if that impossibility was not foreseeable to the promisor." *Id.* at ¶ 11, citing *Scherer*, 108 Ohio App.3d at 591. In *McKinney*, the surety alleged that, although McKinney had been arrested and jailed in Michigan, the local sheriff declined to extradite McKinney. Thus, the surety argued that McKinney's incarceration made it impossible by operation of law to apprehend and return McKinney, and it should not be foreseeable that the sheriff would not extradite McKinney or inform the surety about his incarceration in Michigan.

{¶14} After review, this court noted the lack of evidence regarding the sheriff's actions and disagreed with the surety. Consequently, McKinney's out-of-state incarceration neither constituted "good cause" nor was unforeseeable. *Id.* at ¶ 15. If the bond indicates that a defendant "shall not depart the jurisdiction without leave," but departs Ohio on his or her volition without leave of the court, the flight of the accused "is a business risk that the surety assumes," and a trial court does not err in forfeiting a bond under that circumstance. *McKinney* at ¶ 14, citing *State v. Sexton*, 132 Ohio App.3d 791, 794, 726 N.E.2d 554 (4th Dist.1999), citing *Scherer*, 108 Ohio App.3d at 593-594, 671 N.E.2d 545 (2d Dist.1995).

**{¶15}** In *Sexton*, *supra,* this court held that a defendant's incarceration in another state did not render impossible a surety's performance in Ohio. In *Sexton*, the defendant had been released on bond in Lawrence County after arraignment, but failed to appear for a preliminary hearing due to his incarceration in West Virginia. Later, Sexton was released from the West Virginia jail, but was arrested and incarcerated in South Carolina before his return to Ohio. *Id.* at 792. The trial court conducted a bond forfeiture hearing and entered judgment against the surety. *Id.* On appeal, the surety argued that Sexton's South Carolina incarceration should be viewed as unforeseeable and that it was impossible to produce Sexton's body. This Court, however, rejected the surety's argument and concluded that Sexton voluntarily fled the jurisdiction, that his recognizance explicitly provided that he shall "not depart without leave," and that "[t]he flight of a defendant is a business risk that a surety assumes." *Id.* at 794.

**{¶16}** In the case sub judice, appellants argue that the trial court's finding of a lack of good cause is arbitrary and constitutes an abuse of discretion. Appellants contend that Banks fully complied with the bond conditions up until his sentencing hearing and then he absconded, and "[a]t that point, producing the defendant was impossible." Further, appellants contend that "the

fact that defendant was released pending sentencing after pleading to charges that could send him to prison for decades was unforeseeable." Appellants argue that in *McKinney*, the defendant failed to appear for a pretrial hearing, while here Banks failed to appear for a sentencing hearing after he entered a plea to serious charges. Appellants argue that "had the sureties been made aware of the defendant's plea and release pending sentencing, perhaps they would not have wished to continue on their bond."

**{¶17}** However, appellee points out that appellants produced no evidence to support a finding that their performance on the bond had been rendered impossible by operation of law, or that such an impossibility was foreseeable to the surety. Moreover, appellee also notes that appellants posted this surety bond with knowledge that Banks' bond previously had been revoked in Case No. 20CR109A due to his arrest for the offenses involved in Case No. 20CR470A. Obviously, this particular defendant exhibited characteristics that would appear to elevate his risk of non-appearance.

**{¶18}** It is not a trial court's responsibility to notify a surety of each decision in the case. In *State v. Stevens*, the Supreme Court of Ohio observed:

> The foregoing precedents make it abundantly clear that a surety is charged with the knowledge of when its defendant is to appear in court on the date set for trial. The surety, by posting bail bond, guarantees that it will produce the

defendant in court when called. *State, ex rel. Howell, v. Schiele* (1949), 85 Ohio App. 356, 40 O.O. 234, 88 N.E.2d 215, *affirmed* (1950), 153 Ohio St. 235, 41 O.O. 249, 91 N.E.2d 5. *See Hughes*, *supra.* With respect to the instant cause, the date the defendant pled guilty was the date set for his trial. Had the surety performed its duty of following the progress of defendant's case as well as his whereabouts, it would have had actual notice in open court that the defendant had pled guilty and that the bond was continued. Since the surety did not attend the proceeding where the court continued the bond, the surety had constructive notice of the continuation by way of the court's journal entry. In our view, the surety was afforded sufficient due process by the trial court in a manner provided by Crim.R. 46(J).

30 Ohio St.3d 25, 27, 505 N.E.2d 972 (1987).

**{¶19}** Sureties are provided constructive notice of a continuation of bond by way of the court's entry, and are obligated to remain informed about the status of its principle's case. *State v. AAA Sly Bail Bonds*, 5th Dist. Richland No. 17-CA-56, 2018-Ohio-2943, ¶ 65. Thus, if a surety perceives that continuation of bond may be too risky, it may choose to apply for a discharge of the bond. See Crim.R. 46 and R.C. 2937.40. *Id.* In the case at bar, appellants had constructive notice of the status of the cases.

**{¶20}** As noted above, the act of fleeing to another jurisdiction without a court's permission should be reasonably foreseeable by the surety. *Sherer*, 108 Ohio App.3d 586 at 594, 671 N.E.2d 545. Here, the trial court complied with the bond forfeiture statute, informed the surety about the defendant's

failure to appear and held a hearing to provide appellants the opportunity to show cause as to why judgment should not be entered against them. Therefore, in our view the trial court did not abuse its discretion when it failed to find good cause why judgment should not have been entered against appellants.

{¶21} Accordingly, based upon the foregoing reasons, we overrule appellants' sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                              Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.